O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIGAYA JENSEN,<br><br>          Petitioner,<br><br>          v.<br><br>MERRICK B. GARLAND, United States Attorney General, et al.,<br><br>          Respondents. | Case No. 5:21-cv-01195-CAS (AFM)<br><br>**ORDER ACCEPTING FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE** |

## I. INTRODUCTION

Pursuant to 28 U.S.C. § 636, the Court has reviewed the records and files herein, including the petition for writ of habeas corpus (Dkt. 1, "Petition"), respondents' supplemental brief (Dkt. 16), petitioner's supplemental brief (Dkt. 17), respondents' notice of supplemental authority (Dkt.18), petitioner's supplemental brief in response (Dkt. 20), the Report and Recommendations of the United States Magistrate Judge (Dkt. 22, "Report"), respondents' objections to the report (Dkt. 24, "Objection"), and petitioner's response to respondents' objections (Dkt. 25, "Response"). Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P.

72(b), the Court has conducted a *de novo* review of the matters to which objections have been stated. The Court, having reviewed the parties' assertions and arguments, concludes that nothing set forth in the Objection or otherwise in the record for this case affects, alters, or calls into question the findings and analysis set forth in the Report. Therefore, the Court concurs with and accepts the findings and recommendations of the Magistrate Judge.

## II.   BACKGROUND

### A. Petitioner's Immigration History

Petitioner Ligaya Jensen, a citizen of the Philippines, was admitted to the United States as a lawful permanent resident ("LPR") in 1998. See Petition at 2. Petitioner was sentenced to six years in state prison following a conviction for committing a lewd act upon a child. See generally Petition. After completing her sentence, on December 21, 2018, petitioner was taken into Immigration and Customs Enforcement ("ICE") custody for removal proceedings and has been detained at the Adelanto ICE Processing Facility since this date. Id. at 5. Petitioner was charged with removability under 8 U.S.C. § 1227(a)(2)(A)(iii) based upon her conviction of an aggregated felony. Id. Petitioner received various continuances from January 2019 through December 2019 to obtain legal counsel and prepare applications for relief. See Report at 2-3.[1]

Petitioner filed applications for a waiver of inadmissibility, adjustment of status, and deferral of removal under the Convention Against Torture. Id. at 3. On May 1, 2020, following a hearing on the merits of petitioner's applications for relief, the immigration judge ("IJ") rendered an oral decision denying petitioner's requests and ordering her removal to the Philippines. Id. Petitioner appealed to the Board of Immigration Appeals ("BIA"), and, on September 17, 2020, the BIA returned the record to the Immigration Court because there was no recording of the

---

[1] For a complete record of the procedural history in petitioner's case, see Report at 2-6; Response at 1-5.

IJ's oral decision and thus no record for review. Id. On October 14, 2020, the IJ issued a written decision ordering that petitioner be removed and denying her requests. Id. at 3-4. Petitioner appealed the IJ's decision, and, on March 11, 2021, the BIA dismissed her appeal. Id. at 4. Petitioner filed a petition for review in the Ninth Circuit, and, following the government's unopposed motion to remand, the matter was remanded to the BIA on September 10, 2021. Id. The BIA remanded the matter to the IJ, and, on April 5, 2022, the IJ again denied petitioner's requests and entered an order of removal. Id. Petitioner appealed this decision to the BIA, who dismissed the appeal and affirmed the IJ's decision on September 1, 2022. Id. On September 16, 2022, petitioner filed a petition for review of the BIA's decision and a motion for stay of removal in the Ninth Circuit, which is currently pending. Id. at 5.

### B. Petitioner's Detention and Bond Hearings

On July 2, 2019, petitioner received a bond hearing pursuant to Rodriguez v. Robbins, 804 F.3d 1066 (9th Cir. 2015). Id. The IJ denied petitioner's request for release on bond, finding that the government had proved by clear and convincing evidence that petitioner posed a danger to the community and a flight risk. Id. Petitioner filed a motion for a second Rodriguez bond hearing, which was denied on December 21, 2020. In denying petitioner's request, the IJ found that petitioner provided insufficient evidence of a material change of circumstances to warrant an additional bond hearing and concluded that, under Jennings v. Rodriguez, 138 S. Ct. 830 (2018), she was not entitled to multiple bond hearings. Id.

On March 5, 2021, petitioner filed another motion for a bond hearing under Rodriguez, which was denied on March 8, 2021, on the ground that petitioner set forth insufficient evidence of material change in circumstances pursuant to 8 C.F.R § 1003.19(e). Id. Petitioner then filed a motion for a bond hearing pursuant to Diouf v. Napolitano, 634 F.3d 1090 (9th Cir. 2011), which the IJ denied on June 1, 2021, reasoning that she "previously had a prolonged detention hearing" and

3

1 | showed insufficient evidence of material change of circumstances. Id. at 5-6.
2 | Petitioner filed a motion for reconsideration which the IJ denied on June 7, 2021.
3 | Id. at 6.
4 |      Petitioner again filed a motion for a bond hearing—attaching over 100 pages
5 | of evidence, mental health records, and letters of support—which the IJ denied on
6 | December 15, 2021. Id. The IJ concluded that she was not entitled to periodic
7 | bond hearings pursuant to Jennings and that she had failed to overcome the prior
8 | dangerousness and flight risk determinations. Id. Petitioner appealed, and the BIA
9 | dismissed her appeal on May 5, 2022, agreeing with the IJ that due process did not
10 | require another bond hearing. Id.

### C. Petitioner's Habeas Petition

On July 15, 2021, petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. See Petition at 1. Petitioner alleges that (1) her continued detention violates the Immigration and Nationality Act ("INA"); (2) her continued detention deprives her of substantive due process; and (3) her continued detention without a custody review or bond hearing deprives her of procedural due process. Id. at 7-10.

The Magistrate Judge recommends that the Court deny petitioner's first two claims and grant petitioner's third claim.[2] See Report at 26. Specifically, with respect to petitioner's third claim, the Magistrate Judge concludes that the failure to hold an additional bond hearing has violated petitioner's procedural due process rights. See Report at 26. The Report recommends that the Court order respondents to release petitioner from custody unless "within 28 days of entry of judgment, petitioner is granted a custody hearing before an immigration judge, at which the government shall justify by clear and convincing evidence Petitioner's continued detention." See Report at 26-27. Respondents object to the Magistrate

---

[2] Neither party objects to the Magistrate Judge's recommendations as to petitioner's first two claims. See Objection at 5-6; Response at 4. Accordingly, the Court only addresses petitioner's third claim.

Judge's recommendation as to petitioner's third claim on the following three grounds:

(1) the Mathews test is not the proper framework for adjudicating petitioner's procedural due process claim; (2) petitioner cannot establish a procedural due process claim under the Mathews test; and (3) even if petitioner suffered a procedural due process violation, the government should not bear the burden of demonstrating by clear and convincing evidence that her further detention is justified. See Objection at 5-17. The Court finds that respondents' objections are without merit.

### III. DISCUSSION

Petitioner's third claim alleges that her continued detention without a bond hearing deprives her of procedural due process. Petitioner, as an aggravated felon, is detained pursuant to 8 U.S.C. § 1226(c) and therefore is subject to mandatory detention. See Avilez v. Garland, 48 F.4th 915, 927 (9th Cir. 2022); Jennings v. Rodriguez, 138 S. Ct. 830, 846 (2018); Report at 7-10. Petitioner contends that, notwithstanding the mandatory detention requirement in § 1226(c), her prolonged detention pending removal proceedings without an additional bond hearing violates her rights to procedural due process.

While the Supreme Court has left open the constitutional question of whether prolonged detention of a noncitizen without a bond hearing violates due process, see Johnson v. Arteaga-Martinez, 142 S. Ct. 1827, 1835 (2022); Jennings, 138 S. Ct. at 851; Report at 14-17, both the Supreme Court and the Ninth Circuit have recognized that "[a] statute permitting indefinite detention of [a noncitizen] would raise a serious constitutional problem." Zadvydas v. Davis, 533 U.S. 678, 690 (2001); Rodriguez v. Marin, 909 F.3d 252, 256 (9th Cir. 2018). And the Ninth Circuit has noted that "district courts throughout this circuit have ordered immigration courts to conduct bond hearings for noncitizens held for prolonged

5

periods under § 1226(c)" on procedural due process grounds. Martinez v. Clark, 36 F.4th 1219, 1223 (9th Cir. 2022).

### A. The Mathews Test

In their first objection, respondents contend that the Report improperly applies the test from Mathews v. Eldridge, 424 U.S. 319 (1976), to determine whether due process requires an additional bond hearing. Respondents argue that the Court should instead rely on Demore, wherein the Supreme Court found that a noncitizen's detention under 8 U.S.C. § 1226(c) was constitutional because it continued to "serve its purported immigration purpose" to ensure the noncitizen would be present at removal proceedings. Demore v. Kim, 538 U.S. 510, 527-28 (2003). Respondents argue that, under Demore, prolonged detention without a bond hearing is constitutional so long as it serves its purported immigration purpose. They urge the Court to look to Justice Kennedy's concurrence in Demore for guidance on when due process violations may occur.[3] See Objection at 8.

Respondents' reliance on Demore is not persuasive. While the Supreme Court in Demore upheld the constitutionality of a noncitizen's mandatory detention under § 1226(c), it repeatedly emphasized that the type of detention at issue

---

[3] In Justice Kennedy's concurrence, he states that under the Due Process Clause, a noncitizen detained under § 1226(c), such as the respondent in Demore, "could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Demore, 538 U.S. at 532. He elaborates, "Were there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." Id. at 532-33. Notably, other courts in this circuit have rejected positions like respondents' that urge courts to read Justice Kennedy's concurrence narrowly and limit findings of unconstitutional detention to the circumstances he describes. See Martinez v. Clark, 2019 WL 5968089, at *8 (W.D. Wash., May 23, 2019) ("[M]ost district courts have not interpreted Justice Kennedy's concurrence as limiting unconstitutional detention to situations where the government unreasonably delays the proceedings.")

1  typically lasts for a very limited, "brief" period of time, "roughly a month and a
2  half in the vast majority of cases" and "about five months in the minority of cases
3  in which the [noncitizen] chooses to appeal." Demore, 538 U.S. at 529-30.  The
4  Court noted that, ordinarily, detention under § 1226(c) has an "obvious termination
5  point" because the provision applies only during the pendency of a noncitizen's
6  removal proceedings, and these proceedings are typically completed in an average
7  time of 47 days.  Id.; Zadvydas, 533 U.S. at 697.
8         Here, in contrast to Demore, petitioner has been subject to mandatory
9  detention under § 1226(c) for over four years.  Petitioner's four-year detention far
10 exceeds both the typical month and a half detention under § 1226(c) and even the
11 five-month detention seen in a minority of cases.  In light of the significant length
12 of petitioner's detention, this case is meaningfully distinct from the circumstances
13 in Demore.  Furthermore, acceptance of respondents' argument that, under
14 Demore, detention without a bond hearing is constitutional so long as it serves its
15 purported immigration purpose could effectively permit the indefinite detention of
16 noncitizens where removal proceedings are stalled.  See Report at 15.  Such a
17 result "would raise a serious constitutional problem" and is contrary to
18 fundamental principles of due process.  Zadvydas, 533 U.S. at 690.  For these
19 reasons, the Court does not interpret Demore to stand for the position that, under
20 all circumstances, prolonged detention without a bond hearing is constitutional as
21 long as it serves a purported immigration purpose.
22        Notably, most district courts in the Ninth Circuit apply the test from
23 Mathews v. Eldridge, to evaluate whether due process entitles a petitioner to a
24 bond hearing.  See, e.g., Galdillo v. U.S. Dep't of Homeland Sec., 2021 WL
25 4839502, at *3 (C.D. Cal. May 7, 2021); Jimenez v. Wolf, 2020 WL 510347, at *3
26 (N.D. Cal. Jan. 30, 2020); Report at 17-18.  And, in Rodriguez Diaz, the Ninth
27 Circuit noted the common use of the Mathews test and assumed (without deciding)
28

that it applies to due process claims in the immigration detention context. Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022).

Respondents attempt to distinguish Rodriguez Diaz on the ground that the petitioner in that case was detained under 8 U.S.C. § 1226(a), not § 1226(c). However, the court in Rodriguez Diaz did not determine that Mathews is inapplicable to § 1226(c) cases. Rather, the court outlined that the Mathews test has been used in the immigration detention context by the Ninth Circuit, among other circuit courts, and was applied by the Supreme Court in considering a due process challenge to an immigration exclusion hearing. Id. at 1206. The court reasoned that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Id.

Additionally, the fact that there are key statutory differences between § 1226(a) and § 1226(c) does not mean that the constitutional principles embodied in the Mathews test and outlined in Rodriguez Diaz do not apply to noncitizens detained under § 1226(c). In fact, the distinction between § 1226(a) and § 1226(c) is described in Rodriguez Diaz as demonstrating a greater need for due process protections for noncitizens held under § 1226(c) as they lack statutory procedural protections. See id. at 1202 ("While our past precedents mandated certain procedures for detainees under §§ 1225(b), 1226(c), and 1231(a)(6) as a matter of constitutional avoidance, the holdings of those cases were premised on the lack of process that was afforded to those aliens as compared to § 1226(a) detainees"). In line with this reasoning, district courts in this circuit have applied the Mathews test in similar circumstances, including for detainees held under § 1226(c). See e.g., Jimenez, 2020 WL 510347, at *3 (applying Mathews test to evaluate whether due process entitles petitioner held under § 1226(c) to a bond hearing); Henriquez v. Garland, 2022 WL 2132919, at *5 (N.D. Cal. June 14, 2022) (same); Hernandez Gomez v. Becerra, 2023 WL 2802230, at *3 (N.D. Cal. Apr. 4, 2023) (same).

Moreover, as the Magistrate Judge noted, the Mathews test is broad enough to account for the interests that respondents urge the Court to consider. See Report at 17-18. Respondents have offered no valid alternative to the Mathews framework nor demonstrated that Mathews is inapplicable here. In light of the foregoing, the Court finds that the Mathews test should be applied to petitioner's procedural due process claim and adopts the Report's findings on this issue.

### B. Petitioner's Due Process Claim Under Mathews

In their second objection, respondents argue that petitioner cannot establish a procedural due process violation under the Mathews test. To determine whether due process complies with the Constitution, Mathews outlines a three-part test considering (1) the individual's interest, (2) the government's interest, and (3) the risk of erroneous deprivation of the right absent further procedures. Mathews, 424 U.S. at 334.

#### 1. Individual Interest

The first factor weighs heavily in petitioner's favor as she has a fundamental liberty interest in remaining free from unreasonable imprisonment. See Zadvydas, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects"). Petitioner has been detained for over four years, and it has been more than three years since her first and only bond hearing. As the Magistrate Judge emphasized, courts have found significant private liberty interests for substantially shorter detentions. See Report at 19-20; Galdillo, 2021 WL 4839502 at *3 (finding substantial individual interest because petitioner was detained for two years, and his only bond hearing was conducted 18 months earlier). Given this duration, petitioner's liberty interest is "profound." See Diouf v. Napolitano, 634 F.3d 1090, 1091-92 (9th Cir. 2011). Additionally, the petitioner's detention will likely continue for months into the future, perhaps two years or more. See Report at 20.

Respondents contend that the first Mathews factor should weigh less in petitioner's favor. Respondents point to Rodriguez Diaz to argue that petitioner's interests are diminished because she is subject to an order of removal, has faced prolonged detention partially due to her own decisions to appeal, has received process while detained, and had further process available to her during detention. See Objection at 9-11.

It appears to the Court that petitioner's situation is distinguishable from that of the noncitizen in Rodriguez Diaz. In Rodriguez Diaz, the noncitizen chose to challenge his removal order, prolonging his fourteen-month detention. Rodriguez Diaz, 53 F. 4th at 1208. The court noted that this typical delay somewhat diminished his privacy interest because otherwise, "§ 1226(a) would be unconstitutional as to most any [noncitizen] who elects to challenge a removal order, given the amount of time such a typical challenge takes." Id. By contrast, petitioner's proceedings have been significantly prolonged primarily for reasons outside of her control. Her case was initially remanded to the IJ because the IJ failed to issue a written decision, causing a six-month delay. See Response at 9-10. Subsequently, in petitioner's Ninth Circuit appeal, the government filed a motion for remand due to an incomplete record, causing an additional one-year delay. See id.; Report at 21-22. Her prolonged detention of over four years far exceeds the petitioner's fourteen months in Rodriguez Diaz and was largely attributable to the government's conduct.

Additionally, even the actions which petitioner did control, such as requesting continuances or seeking appeals of decisions by the IJ and BIA, do not significantly diminish her liberty interests. As the Magistrate Judge noted, pursuing relief and requesting continuances does not deprive petitioner of a constitutional right to due process. See Report at 21; Henriquez v. Garland, 2022 WL 2132919, at *5 (N.D. Cal. June 14, 2022); Masood v. Barr, 2020 WL 95633 at *3 (N.D. Cal. Jan 8, 2022) ("The BIA appeal and remand motion are perfectly

legitimate proceedings [petitioner] is legally entitled to pursue, and it ill suits the United States to suggest that he could shorten his detention by giving up these rights").

Finally, the process available to petitioner during detention does not diminish her liberty interest. In Rodriguez Diaz, because the noncitizen was held under § 1226(a), he had substantial procedural protections available, could seek additional bond hearings for materially changed circumstances, and decisions regarding his detention were subject to judicial review. Rodriguez Diaz, 53 F. 4th at 1209-10. In contrast, because petitioner is held under § 1226(c), she does not have a statutory right to a bond hearing and thus has far less process available to her than the noncitizen in Rodriguez Diaz. While petitioner received one bond hearing during her detention, that was over three years ago. Petitioner filed four subsequent motions for bond hearings, all of which were denied, and she is statutorily not entitled to any bond hearings. Thus, the process available to and received by her does not diminish her liberty interests. See Galdillo, 2021 WL 4839502, at *3-4 (finding due process required another bond hearing for a noncitizen detained under §1226(c) even though he already received one Rodriguez bond hearing and multiple custody redeterminations). In light of these considerations, the Court agrees with the Report that this factor weighs heavily in petitioner's favor.

2. **Government Interest**

The second Mathews factor addresses the weight of the government's interest, particularly in keeping petitioner in custody without providing a bond hearing. See Galdillo, 2021 WL 4839502, at *3. Respondents contend that the government has a significant interest in protecting the public from criminal noncitizens and ensuring successful removal. Respondents also contend that this interest grows over the length of detention as the amount of government resources spent and the risk of detainee flight increase. See Objection at 12-14. However, as

11

the Magistrate Judge emphasized, the government's interest is not in petitioner's continued detention but in her continued detention without another individualized bond hearing.

Courts have found that considering the "minimal cost of conducting a bond hearing, and the ability of the IJ to adjudicate the ultimate legal issue as to whether petition's continued detention is justified," the government's interest in detaining a noncitizen without a bond hearing is not as weighty as the petitioner's interest. Lopez Reyes v. Bonnar, 362 F. Supp. 3d 762, 777 (N.D. Cal. 2019); See Zagal-Alcaraz v. ICE Field Off., 2020 WL 1862254, at *7 (D. Or. Mar. 25, 2020) (collecting cases, finding that governmental interest in detaining noncitizen without a bond hearing is not strong given the minimal cost of such hearings and the IJ's ability to assess whether detention is justified). Providing petitioner with a bond hearing would not impede respondents' interest in effecting removal or protecting the public, as the purpose of the bond hearing is to determine whether petitioner is a danger or flight risk. See Jimenez, 2020 WL 510347, at *3 ("a bond hearing would not undercut the government's asserted interest in effecting removal. After all, the purpose of a bond hearing is to inquire whether the [noncitizen] represents a flight risk or danger to the community."); see also Martinez v. Clark, 2019 WL 5968089, at *8 (W.D. Wash. May 23, 2019). In short, while respondents have a strong interest in enforcing immigration laws and ensuring that lawful removal orders are executed, they do not have a strong interest in detaining petitioner without a bond hearing.

3. **Erroneous Deprivation**

The third Mathews factor considers the risk of erroneous deprivation of the right absent further procedures and the potential probable value of additional or substitute procedural safeguards. Mathews, 424 U.S. at 335. In evaluating the risk of erroneous deprivation in the context of noncitizen detention, the Ninth Circuit has looked to whether the detainee has a statutory right to procedural protections,

such as individualized custody determinations and the right to seek additional bond hearings throughout detention. See Rodriguez Diaz, 53 F.4th at 1209-10 (finding a small risk of erroneous deprivation where petitioner was detained under § 1226(a) and thus received numerous procedural protections, including individualized custody determinations and right to seek additional bond hearings).  Here, petitioner is detained under § 1226(c) and therefore does not have a statutory right to additional bond hearings.  Petitioner has already been held for nearly four years without a bond hearing and does not have the opportunity to be heard or present evidence showing that she is neither a flight risk nor a danger to the public.  In light of the fact that additional procedures are not mandated under § 1226(c), the risk of erroneous deprivation here is significant.

Respondents contend that analysis of the third factor should account for the fact that, in adopting § 1226(c), Congress intended to make additional procedural safeguards unavailable for criminal noncitizens.  See Objection at 11-12. However, congressional rationale for the procedures available pursuant to this statute does not override petitioner's constitutional right to due process.  See Galdillo, 2021 WL 4839502, at *4 (finding erroneous deprivation weighed in favor of another bond hearing where petitioner was detained pursuant to §1226(c) and had been held without a bond hearing for a year and a half).  Because petitioner lacks procedural safeguards and it is unclear when her petition for review will be adjudicated, the risk of erroneous deprivation of her liberty interest is high, and the value of an additional bond hearing after over four years of detention is significant. Thus, the third factor weighs in petitioner's favor.

In sum, weighing each of the factors under the Mathews test, petitioner's prolonged detention without a bond hearing is unreasonable and therefore violates her rights to procedural due process.  The Court also agrees with the Magistrate Judge's conclusion that the appropriate remedy here is an individualized custody hearing.  See Report  24-25; Jimenez, 2020 WL 510347, at *4 (ordering a bond

hearing within 30 days for noncitizen detained in removal proceedings pursuant to § 1226(c)); Romero v. Wolf, 2021 WL 254435, at *5 (N.D. Cal. Jan. 26, 2021) (ordering a custody hearing within 28 days of the court's order); Masood, 2020 WL 95633, at *4 (same).

### C. Burden of Proof at Petitioner's Bond Hearing

In their third objection, respondents contend that if a bond hearing is required, the government should not bear the burden of proving by clear and convincing evidence that petitioner's detention is justified. However, as the Magistrate Judge noted, Ninth Circuit case law supports the conclusion that the government bears the burden of justifying petitioner's continued detention by way of clear and convincing evidence that she poses a danger of flight risk. See Singh v. Holder, 638 F.3d 1196, 1204 (9th Cir. 2011); Martinez, 36 F.4th at 1231; Report at 25-26.

Respondents contend that the Report erred in relying on Singh and call into question whether Singh remains good law. In Singh, the Ninth Circuit determined that, in bond hearings for prolonged immigration detainees, the burden is on the government to establish that detention is justified by clear and convincing evidence. Singh, 638 F.3d at 1203-04. Singh considered the burden of proof in bond hearings that had previously been held to be statutorily required in Casas-Castrillon v. Department of Homeland Security, 535 F.3d 942 (9th Cir. 2008). This statutory right to a bond hearing was later rejected by Jennings, which, according to respondents, means that Singh is no longer good law.

Contrary to respondents' argument, Jennings did not disrupt the constitutional principles underlying the burden of proof decision in Singh. And, although the Ninth Circuit has declined to address whether Singh is good law, it has recognized that Singh was decided on principles of procedural due process and the substantial liberty interest of detained individuals, not on the statutory grounds overturned in Jennings. Rodriguez Diaz, 53 F.4th at 1199, 1201-02, n.4 (referring

14

1  to the bond hearing procedures outlined in Singh, "we based this conclusion on
2  general principles of procedural due process, reasoning that a detained person's
3  liberty interest is substantial"); see Singh, 638 F.3d at 1203-04 ("Because it is
4  improper to ask the individual to 'share equally with society the risk of error when
5  the possible injury to the individual'—deprivation of liberty—is so significant, a
6  clear and convincing evidence standard of proof provides the appropriate level of
7  procedural protection").  Furthermore, the Ninth Circuit suggested that Singh
8  continues to be good law in Martinez, finding "the BIA properly noted that the
9  government bore the burden to establish by clear and convincing evidence that
10 [petitioner] is a danger to the community." Martinez, 36 F.4th at 1231.
11 Accordingly, courts in this district have continued to apply Singh following the
12 decision in Jennings.  See, e.g., Cortez v. Sessions, 318 F. Supp. 3d 1134, 1146-47
13 (N.D. Cal. 2018) (declining to find that Jennings reversed the clear and convincing
14 evidence standard in Singh or subsequent Ninth Circuit cases relying on its
15 reasoning); Lopez v. Garland, 2022 WL 4586413, at *9; Report at 25-26.
16        Respondents further argue that the Report errs in relying on Singh because
17 petitioner already had one bond hearing with the government bearing the burden of
18 proof by clear and convincing evidence.  Respondents point to Rodriguez Diaz to
19 support the contention that petitioner is not entitled to a second hearing with this
20 standard of review. See Objection at 14-17.
21        The Court is not persuaded by this argument.  In Rodriguez Diaz, the court
22 held that a clear-and-convincing standard was not required for detainees who could
23 access procedural protections under § 1226(a) but declined to extend this to
24 detainees under § 1226(c) who lack such protections.  Rodriguez Diaz 53 F.4th at
25 1201-02.  The court repeatedly emphasized that § 1226(a) is distinct because it
26 provides "extensive procedural protections that are unavailable under other
27 detention provisions." Id. at 1202.  Because petitioner is detained under § 1226(c),
28 she does not have these extensive procedural protections and has a substantial

liberty interest at stake in her potential bond hearing. Thus, the burden appropriately falls on the government. See <u>Singh</u>, 638 F.3d at 1203 ("Given the substantial liberty interest at stake…we hold that the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond").

The Court agrees with the conclusion of the Magistrate Judge that absent contrary direction from the Ninth Circuit, <u>Singh</u> is appropriate to follow. Thus, the burden is on the government to prove by clear and convincing evidence that petitioner is a flight risk or a danger to the community to justify her continued detention.

### IV. CONCLUSION

Having completed its review, the Court accepts the findings and recommendations set forth in the Report. In accordance with the foregoing, the Court **DENIES** petitioner's first two claims and **GRANTS** petitioner's third claim. Respondents are required to release petitioner from custody unless within 28 days of entry of judgment, petitioner is granted a custody hearing before an immigration judge, at which the government shall justify by clear and convincing evidence petitioner's continued detention.

Dated: May 3, 2023

                                      CHRISTINA A. SNYDER
                                      United States District Judge